```
            UNITED STATES DISTRICT COURT
         SOUTHERN DISTRICT OF WEST VIRGINIA
                    AT CHARLESTON
```

**WALHONDE TOOLS, INC., a**
**West Virginia corporation,**
**and GARY McCLURE**

       Plaintiffs

v.                                      Civil Action No. 2:06-0537

**ALLEGHENY ENERGY, INC., a**
**Maryland corporation, ALLEGHENY**
**ENERGY SUPPLY COMPANY, LLC,**
**a Delaware Limited Liability**
**Company,**

       Defendants


## MEMORANDUM OPINION AND ORDER

**Pending before the court are the following motions: (1) defendants' motion, filed January 19, 2007, seeking to bifurcate the trial of this action as to liability and damages and further requesting the court stay all discovery relating to damages until the question of liability has been resolved; and (2) plaintiffs' motion, filed April 3, 2007, seeking leave to file a second amended complaint.[1]**

---

[1] **Also pending before the court are the following motions, which are ORDERED granted: (1) plaintiffs' motion, filed February 9, 2007, seeking to extend the time in which plaintiffs may file a response to defendants' motion to bifurcate and stay to February 14, 2007; (2) the parties' joint motion, filed February 22, 2007, seeking to extend the time in which defendants may file**

1

I.

Plaintiffs instituted this action on June 30, 2006, asserting that federal jurisdiction was proper inasmuch as complete diversity exists between the parties and the amount in controversy requirement is satisfied. (Compl. ¶¶ 1-5.) On September 8, 2006, the parties filed a document indicating that defendants consented to permitting plaintiffs to amend their complaint, and on September 14, 2006, plaintiffs filed an amended complaint.

According to the allegations in the amended complaint, the United States Patent and Trademark Office issued two patents to plaintiff Gary McClure. (Am. Compl. ¶¶ 7,8.) The first patent was issued on July 11, 1989, and is entitled "Boiler Wall Tube Tool." (Id. ¶ 7.) The second patent was issued on June 26, 1990, and is known as the "Bolt-Type Boiler Wall Tube Tool." (Id. ¶ 8.) Jointly, the two patents are referred to as "Wallbanger tools," which are used in power plant boiler tube

---

a reply to plaintiffs' response to defendants' motion to bifurcate and stay to March 2, 2007; and (3) plaintiffs' motion, filed May 18, 2007, seeking leave to supplement their reply to defendants' response to plaintiffs' motion seeking leave to file a second amended complaint. With respect to the second motion, in a conversation with the court's law clerk on June 8, 2007, counsel for defendants indicated that subsequent to the filing of the joint motion, he determined that a reply was unnecessary.

installation and repair.  (Id. ¶¶ 9, 10.)  Plaintiff Walhonde Tools, Inc., is the licensee of the Wallbanger tools.  (Id. ¶ 10.)

At an unspecified time subsequent to the issuance of the two patents and prior to October 24, 1996, plaintiffs allege that defendants infringed upon the patents "by making, using, and/or selling a number of infringing tools without the consent or authorization of plaintiffs," and "also provided unauthorized copies of the Wallbanger tools to their contractor for use in the performance of work at defendants' power plant."  (Am. Compl. ¶ 11.)  On October 24, 1996, McClure and Allegheny Power entered into an agreement whereby Allegheny Power, among other things, (1) recognized the validity and enforceability of the patents; (2) acknowledged that it had made, used and/or sold a number of tools which infringed on either or both of the two patents; (3) warranted that it is not currently making, using or selling any tools which infringe on either or both of the two patents; (4) further warranted that it "will not make, use or sell Infringing Tools [tools violating either or both patents] during the remaining terms of the Patents, respectively, without McClure's express authorization, except . . . to obtain said tools directly from Walhonde Tools, Inc., or any other licensee of the Patents,

3

without any additional consent from McClure;" and (5) "agreed to use tools manufactured by Walhonde Tools, Inc., or any other licensee of McClure, as appropriate, in its future business activities."  (Settlement Agreement, Warranties and Payment Sections, attached as Ex. to Prop. Sec. Am. Compl.)  Under the terms of the settlement agreement, McClure received a certified check for $3,240 and further received reimbursement for the attorneys' fees he incurred as a result of the infringement. (Settlement Agreement, Payment Section.)

After entering into the settlement agreement, plaintiffs contend defendants knowingly breached its terms and conditions on more than one occasion "by making, using, and/or selling unauthorized copies of the Wallbanger" and further "fail[ing] to use tools manufactured by Plaintiffs in Defendants' future business activities."  (Am. Compl. ¶¶ 15.)  No other claim is asserted in the amended complaint.

II.

The proposed second amended complaint seeks to add a fraudulent inducement claim in addition to the breach of contract claim that was previously asserted in the amended complaint. According to plaintiffs, defendants made certain representations

4

and promises described in the settlement agreement without any intention of carrying them out and for the sole purpose of willfully and fraudulently inducing plaintiffs to enter into the settlement agreement and resolve plaintiffs' then-existing claims against the defendants.  (Prop. Sec. Am. Compl. ¶ 23.)  More specifically, plaintiffs state that

> Defendants knowingly entered into the Contract [settlement agreement] with the intention that they would avoid the terms of the Contract by allowing their contractors to continue to use unauthorized copies of the Wallbanger rather than requiring them to use the Wallbanger in Defendants' future business activities . . . [and] use of unauthorized copies of the Wallbanger by the Defendants' contractors constitutes use of the unauthorized tools on the Defendants' system in violation of the Contract [settlement agreement].
>
> Plaintiffs were intentionally misled and induced to enter into the Contract and accept a meager amount to settle their claim in reasonable reliance upon the Defendants' representations regarding use of the Wallbanger in their future business activities.

(Prop. Compl. ¶¶ 27, 28.)

Defendants oppose plaintiffs' motion for leave to amend contending (1) it is untimely; (2) plaintiffs cannot demonstrate good cause for modifying the scheduling order to permit the proposed amendment; (3) the proposed amendment would be futile inasmuch as plaintiffs have failed to plead fraud with the requisite particularity; and (4) even if plaintiffs properly

plead their fraud in the inducement claim such a claim is not actionable insofar as it is predicated on a misrepresentation as to a future occurrence.

A. <u>Rule 15(a) and 16(b) Analysis</u>

Federal Rule of Civil Procedure 15(a) permits amendment of a complaint after a responsive pleading has been filed "only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires." Fed. R. Civ. P. 15(a). In its most recent discussion of Rule 15(a), our court of appeals observed as follows:

> Whether an amendment is prejudicial will often be determined by the nature of the amendment and its timing. A common example of a prejudicial amendment is one that "raises a new legal theory that would require the gathering and analysis of facts not already considered by the [defendant, and] is offered shortly before or during trial." An amendment is not prejudicial, by contrast, if it merely adds an additional theory of recovery to the facts already pled and is offered before any discovery has occurred.

<u>Laber v. Harvey</u>, 438 F.3d 404, 427 (4th Cir. 2006) (citations omitted).

In addition to Rule 15(a), Rule 16(b) provides that "a schedule shall not be modified except upon a showing of good

cause and by leave of the district judge or, when authorized by local rule, by a magistrate judge." Fed. R. Civ. P. 16(b). Rule 16(b) specifically contemplates the establishment of a deadline for joining "other parties and . . . amend[ing] the pleadings." Fed. R. Civ. P. 16(b). Here, the deadline for the amendment of any pleading was November 13, 2006, as established by the court's order and notice.

Seven courts of appeal have discussed the interplay between Rules 15(a) and 16(b) when a pleading amendment has been sought following expiration of the court-imposed deadline for such modifications. In each instance, the reviewing appellate courts have accorded primacy to Rule 16(b). See Leary v. Daeschner, 349 F.3d 888, 908-09 (6th Cir. 2003); S & W Enterprises, L.L.C. v. SouthTrust Bank of Alabama, NA, 315 F.3d 533, 536 (5th Cir. 2003); Parker v. Columbia Pictures Industries, 204 F.3d 326, 342 (2nd Cir. 2000); In re Milk Prods. Antitrust Litig., 195 F.3d 430, 437 (8th Cir. 1999); Sosa v. Airprint Sys., Inc., 133 F.3d 1417, 1419 (11th Cir. 1998) (per curiam); Johnson v. Mammoth Recreations, Inc., 975 F.2d 604, 610 (9th Cir. 1992); Riofrio Anda v. Ralston Purina Co., 959 F.2d 1149, 1154-55 (1st

Cir. 1992).[2]

In <u>Leary</u>, the most recent appellate decision to have confronted the issue, the United States Court of Appeals for the Sixth Circuit explained both the rationale for its holding and the proper application of Rule 16(b):

> More than twenty years after the Court's decision in Foman[<u>v. Davis</u>, 371 U.S. 178, 182 (1962)], the 1983 amendments to the Federal Rules of Civil Procedure altered Rule 16 to contain a provision restricting the timing of amendments. Rule 16 states, in relevant part: "the district judge . . . shall, after receiving the report from the parties under Rule 26(f) . . . enter a scheduling order that limits the time (1) to join other parties and to amend the pleadings . . . ."  The Rule is designed to ensure that "at some point both the parties and the pleadings will be fixed."  Fed.R.Civ.P. 16, 1983 advisory committee's notes.  The Rule permits modification to the scheduling order "upon a showing of good cause and by leave of the district judge." But a court choosing to modify the schedule upon a showing of good cause, may do so only "if it cannot reasonably be met despite the diligence of the party seeking the extension." Fed.R.Civ.P. 16, 1983 advisory committee's notes.  Another important consideration for a district court deciding whether Rule 16's "good cause" standard is met is whether the opposing party will suffer

---

[2]Our court of appeals has not squarely confronted in a published opinion the interaction between the two rules.  In its most recent mention of Rule 16(b) in this setting, however, it appears to have at least implicitly noted the rule's potential applicability in cases where the deadline for amended pleadings has passed.  <u>Laber</u>, 438 F.3d at 427 n.23 ("The Army does not argue that we should apply the 'good cause' legal standard in Fed.R.Civ.P. 16(b) because Laber's motion to amend came after the deadline set in the scheduling order issued in this case.  We therefore do not consider the issue.").

8

prejudice by virtue of the amendment.

<u>Leary</u>, 349 F.3d at 905 (some citations omitted).  Diligence of the moving party, and prejudice, are thus paramount considerations under Rule 16(b).

Plaintiffs' motion seeking leave to file a second amended complaint was filed nearly six months after the November 13, 2006, deadline for the amendment of the parties' pleadings.  Plaintiffs, however, observe that they have exercised due diligence in pursuing their breach of contract claim and "gained the information necessary to assert a claim of fraud against Allegheny, information Plaintiffs lacked during the time frame set forth in the Scheduling Order for amending pleadings."  More specifically, plaintiffs state

> In the Motion to Bifurcate and in correspondence from defense counsel related thereto, Plaintiffs discovered Allegheny's incongruous position - that the Settlement Agreement does not pertain to contractors working <u>for Allegheny</u> on <u>Allegheny sites</u>.  This position is contrary to representations made to Plaintiffs by Allegheny representatives prior to execution of the Settlement Agreement and upon which Plaintiffs relied in entering into the Agreement.  Since learning of Allegheny's actual intent at the time they entered into the Agreement (contrary to their stated intent) and the ordering of over 300 Wallbanger copies by Allegheny and its contractors, Plaintiffs have moved for leave to amend their Complaint to assert fraud in the inducement.

(Pls.' Reply Memo. at 5) (emphasis in original) (citation omitted).

It seems as though plaintiffs' motion seeking leave to file a second amended complaint could have been timely brought soon after learning of defendants' "incongruous position" in their motion to bifurcate and stay, which was filed on January 19, 2007; however, plaintiffs then took nearly two and a half months before filing their motion.  While the lapse of that period is perhaps as much as two months longer than was reasonably necessary, even that length of time does not constitute an undue delay under the circumstances here.

In any event, defendants have not identified any prejudice that they would suffer were the court to permit plaintiffs to proceed with the proposed amendment.  Indeed, plaintiffs' supplemental reply in this matter suggests that plaintiffs have been conducting discovery related to the proposed fraudulent inducement claim and it does not appear to the court that a continuation of the discovery deadline for that claim will be necessary.  Also, the court observes that the proposed fraudulent inducement claim, while a new theory of recovery, does not appear to require the gathering and analysis of facts not already considered by the defendants in defense of the breach of

contract claim. On balance the court finds that the Rule 15(a) and 16(b) analysis militates in favor of a finding of good cause and the granting to plaintiffs of leave to file a second amended complaint.

B. <u>Futility of Plaintiffs' Proposed Amendment</u>

The court next addresses whether plaintiffs' fraud in the inducement claim is a cognizable cause of action under West Virginia law. The West Virginia Supreme Court of Appeals has recognized that fraud "cannot be based on statements which are promissory in nature or which constitute expressions of intention, <u>unless</u> the non-existence of the intention to fulfill the promise at the time it was made is shown." <u>Croston v. Emax Oil Co.</u>, 464 S.E.2d 728, 732 (W. Va. 1995) (emphasis supplied). Inasmuch as the essence of plaintiffs' proposed claim is that defendants had no intention of fulfilling the promises made in the settlement agreement at the time defendants entered into it they may pursue this claim under West Virginia law.[3]

---

[3] There is some authority for the proposition that plaintiffs should not be permitted to pursue their fraud in the inducement claim. <u>See</u> <u>Bridgestone/Firestone, Inc. v. Recovery Credit Services, Inc.</u>, 98 F.3d 13, 20 (2d Cir. 1996) (applying New York law and holding that misrepresentations of intent to perform under a contract are not sufficient to support a claim of fraud); <u>First Bank of Americas v. Motor Car Funding, Inc.</u>, 690 N.Y.S.2d 17, 20-21 (1st Dep't 1990) (observing that

C.   <u>Satisfaction of the Heightened Pleading Requirement</u>

With respect to defendants' argument that fraud was not plead with the requisite particularity, Rule 9, which pertains to the pleading of special matters, provides that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity."  Fed. R. Civ. P. 9(b).  "[T]he circumstances required to be pled with particularity under Rule 9(b) are the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby."  <u>Harrison v. Westinghouse Savannah River Co.</u>, 176 F.3d 776, 784 (4th Cir. 1999) (quoting 5 Wright & Miller, Federal Practice & Procedure § 1297 at 590 (2d ed. 1990)).

The contents of the allegedly fraudulent misrepresentations are apparent in the proposed second amended complaint inasmuch as plaintiffs' fraud claim identifies specific

---

"[a] fraud claim should be dismissed as redundant when it merely restates a breach of contract claim, i.e., when the only fraud alleged is that the defendant was not sincere when it promised to perform under the contract.").  However, most jurisdictions, including West Virginia, adhere to the view that "fraud may be predicated on promises made with a present intention not to perform them or, as the rule is frequently expressed, on promises made without an intention of performance."  <u>Croston</u>, 464 S.E.2d at 732; 37 Am. Jur. 2d Fraud and Deceit § 90.

12

allegedly material misrepresentations, some of which were oral, and plaintiffs further allege, consistent with West Virginia law, that defendants lacked the intention to abide by the promises made in the settlement agreement when the agreement was entered into. (Prop. Sec. Am. Compl. ¶¶ 19-21, 27-28.) Plaintiffs' fraud in the inducement claim, however, is not particularly clear as to the identity of the persons who made the fraudulent misrepresentations or the time that the misrepresentations occurred. Plaintiffs refer generally to "Defendants" with respect to certain alleged misrepresentations and do not specifically identify any persons or agents who made the purported misrepresentations. Moreover, with respect to the time of certain misrepresentations, plaintiffs state generally that the misrepresentations occurred "[p]rior to the execution of the aforesaid contract [referring to the settlement agreement]." (Id. ¶ 19.) While plaintiffs need not elucidate every detail of their fraudulent inducement claim, such general allegations do not satisfy the particularity requirement of Rule 9(b).

Nevertheless, outright rejection of plaintiffs' proposed fraud in the inducement claim is not warranted. Our court of appeals has recognized that "[a] court should hesitate to dismiss a complaint under Rule 9(b) if the court is satisfied (1) that the

13

defendant has been made aware of the particular circumstances for which [it] will have to prepare a defense at trial, and (2) that plaintiff has substantial prediscovery evidence of those facts." Harrison, 176 F.3d at 784.  Although the court does not address the merits of plaintiffs' proposed fraudulent inducement claim, it observes that plaintiffs have identified specific evidence, perhaps acquired after the inception of discovery, which purportedly supports their claim.  Regardless of the merits of plaintiffs' fraud in the inducement claim or the evidence which plaintiffs have in support thereof, it is plain enough that defendants have been made aware of the general circumstances for which they will have to prepare a defense.

In view of the foregoing, the court declines to accept plaintiffs' proposed second amended complaint, filed as an attachment to their motion, but will grant plaintiffs leave to file a second amended complaint which more fully sets forth the fraud in the inducement allegations, namely, those respecting the time of the misrepresentations and the identity of the person or persons making the misrepresentations.[4]

---

[4] In their second amended complaint, plaintiffs may wish to revise the allegations contained in paragraph 22 of the proposed second amended complaint pertaining to the date of the execution of the settlement agreement.

**III.**

**The court next turns to defendants' motion seeking to bifurcate the trial of this action as to liability and damages and further seeking to stay all discovery relating to damages pending resolution of the question of defendants' liability.  In the alternative, defendants suggest "bifurcating only the pretrial portions of this action."  An approach proposed by defendants is that discovery be limited to that involving liability, followed by motions for summary judgment, and then, should plaintiffs' case survive motion for summary judgment, a second discovery phase on the scope of the breach and resultant damages could begin.**

**According to defendants, the gravamen of plaintiffs' claim is that certain contractors retained by defendants, not defendants, infringed upon plaintiffs' patents.  Defendants suggest that they were not obligated to "police" these contractors for potential infringement upon plaintiffs' patents and propose that the court bifurcate the issue of damages and stay all proceedings relating to damages pending resolution of the issue of liability.**

15

Defendants also observe that plaintiffs have propounded extensive written discovery which further militates in favor of bifurcation.  Should the court resolve the issue of liability in favor of defendants, which defendants suggest could be quickly and easily resolved, defendants observe that the court and the parties would not have to devote significant resources to further development of this action.  Finally, defendants maintain that they could be prejudiced were the court not to bifurcate this action

Plaintiffs respond by insisting that this case has merit and by disputing defendants' suggestion that plaintiffs are using this action to develop claims against defendants' contractors.  Plaintiffs further observe that "[e]vidence concerning the issues of liability and damages, both documentary and testimonial, overlaps."  According to plaintiffs, bifurcation and a stay of discovery of damages is unwarranted.

Rule 42(b) allows bifurcation of issues "in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy."  Fed. R. Civ. P. 42(b).  Respected commentators have observed:

> The provision for separate trials in Rule 42(b) is intended to further the parties' convenience, avoid delay and prejudice, and serve the ends of justice.  It is the interest of efficient judicial administration that is to be controlling under the rule, rather than the wishes of the parties.  The piecemeal trial of separate issues in a single lawsuit or the repetitive trial of the same issue in severed claims is not to be the usual course.  Thus Rule 42(b) should be resorted to only in exercise of informed discretion when the court believes that separation will achieve the purpose of the rule.

9 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2388 (3d ed. 2004).  A decision to bifurcate is left to the sound discretion of the court.  <u>Shetterly v. Raymark Industries, Inc.</u>, 117 F.3d 776, 782 (4th Cir. 1997).

Defendants seek the extraordinary relief of splitting this case into two cases by proceeding on liability, then, if plaintiffs prevail, proceeding on discovery and trial of damages.  Should plaintiffs, in fact, prevail on liability, the result would be that the parties would be forced to start anew with damages with the prospect of another trial by another jury on that issue.  The court declines to put the parties through the needless expense of two trials in the same action.

As for defendants' request to bifurcate the pretrial portions of this case, the court would be inclined to grant such a request if defendants could establish a substantial probability

17

of prevailing on the question of liability.  Although defendants claim plaintiffs' case is without merit, plaintiffs have provided the court with the testimony of Troy Woodall, who was deposed on January 25, 2007.  Woodall testified that he made copies of the Wallbanger tool sometime from 2003 to 2004 for, <u>inter alia</u>, Allegheny Energy.  (Depo. of Troy Woodall at 27-29, attached as Ex. B to Pls.' Resp. to Defs.' Mot. to Bifur.)  The court finds that, at this early stage, defendants have yet to demonstrate a substantial likelihood of prevailing on the liability portion of this case.  The denial of their alternative request is thus proper as well.

IV.

Accordingly, it is ORDERED that defendants' motion seeking to bifurcate the trial of this action as to liability and damages and to stay all discovery relating to damages until the resolution of the question of liability be, and it hereby is, denied.  It is further ORDERED that plaintiffs' motion seeking leave to file a second amended complaint be, and it hereby is, granted to the extent that plaintiffs may file a second amended complaint, which complies with the requirements of Rule 9(b) as set forth above, on or before June 26, 2007.

The Clerk is directed to forward copies of this order to all counsel of record.

DATED: June 15, 2007

John T. Copenhaver, Jr.
United States District Judge